| | | |
|---|---|---|
| **LARRY LABUL,** *Individually and on* | : | |
| *Behalf of All Others Similarly* | : | |
| *Situated,* | : | **No. 3:18-CV-2062 (VLB)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **April 2, 2019** |
| | : | |
| **XPO LOGISTICS, INC., BRADLEY S.** | : | |
| **JACOBS, JOHN J. HARDIG,** | : | |
| **Defendants.** | : | |

## RULING AND ORDER ON MOTIONS TO APPOINT
## LEAD PLAINTIFF AND LEAD COUNSEL

On December 14, 2018, Larry Labul ("Plaintiff" or "Mr. Labul") sued XPO Logistics, Inc. ("XPO"), Bradley S. Jacobs, and John J. Hardig ("Defendants"), alleging that Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 15 U.S.C. § 78t(a). [Dkt. 1 (Compl.)]. Plaintiff brought the action on behalf of himself and all others who purchased or otherwise acquired XPO securities between February 26, 2014 and December 12, 2018, inclusive (the "Class Period").

Before the Court now are competing motions for appointment as lead plaintiff and approval of lead counsel. For the reasons set forth below, the Court GRANTS the motion of the Pension Funds for appointment as lead plaintiff, [Dkt. 31], APPROVES its selection of Robbins Geller as lead counsel for the class, and DENIES AS MOOT the motions by Bradley Cooper, Riviera Beach Police Pension Fund, Local 464A, and XPO Investor Group.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Defendant XPO is a corporation that provides transportation and logistics services to customers in various industries in the United States and internationally.  [Dkt. 1 (Compl.) ¶ 15, 20].  XPO's stock trade on the New York Stock Exchange ("NYSE") under the ticker symbol "XPO."  *Id.* ¶ 2, 15.

XPO was formerly known as Express-1 Expedited Solutions, Inc. ("Express-1").  On September 2, 2011, Defendant Bradley Jacobs, through Jacobs Private Equity, LLC, acquired a 71% ownership interest in Express-1, and became Chairman of the Board of Directors and Chief Executive Officer ("CEO") and renamed the company "XPO Logistics, Inc."  *Id.* ¶ 3, 21.  Since that time, XPO has allegedly pursued an aggressive mergers and acquisitions ("M&A") strategy, completing seventeen acquisitions and deploying $6.1 billion of capital.  *Id.* ¶¶ 3, 5, 21, 23.  On August 2, 2017, Jacobs announced plans to earmark up to $8 billion for additional acquisitions.  Defendant John Hardig served as Chief Financial Officer ("CFO") of XPO during all relevant times.  *Id.* ¶ 17.

Plaintiff acquired XPO common stock allegedly at artificially inflated prices during the Class Period.  [Dkt. 1 ¶ 14].  He claims the stock he owned lost value and caused him damage when a report revealed the untruth of XPO's representations as to its financial stability and success.  *Id.* ¶ 7, 14.

Plaintiff alleges that, throughout the Class Period, Defendant XPO made materially false and misleading statements regarding its business, operational and compliance policies.  *Id.* ¶ 6.  He alleges that the Individual Defendants, Jacobs and Hardig, controlled the contents of XPO's SEC filings, press releases, and other market communications

2

which Plaintiff alleges were misleading.  *Id.* ¶ 19.  He further alleges that Defendants Jacobs and Hardig knew that the representations XPO made were materially false and misleading and that adverse facts were not being disclosed.  *Id.*

Plaintiff alleges the beginning of the Class Period on February 23, 2015, when XPO filed an Annual Report Form 10-K with the SEC, reporting a net loss of $63.6 million, or $2.00 per diluted share, on revenue of $2.36 billion for 2014, compared to a net loss of $48.53 million, or $2.26 per diluted share, on revenue of $702.3 million for 2013.  *Id.* ¶ 24. It also reported its debt obligations and estimated future amortization expense for amortizable assets for the next five years.  *Id.* ¶ 26-27.  On February 29, 2016, XPO filed an Annual Report on Form 10-K with the SEC, reporting a net loss of $191.1 million, or $2.65 per diluted share, on revenue of $7.62 billion in 2015.  *Id.* ¶ 29.  It again reported its debt obligations and estimated future amortization expense for amortizable assets for the next five years.  *Id.* ¶ 30-31.  XPO filed Annual Reports with the SEC for 2016 and 2017 as well.  For 2016, XPO reported net income of $69 million, or $0.53 per diluted share, on revenue of $14.62 billion.  *Id.* ¶ 33.  For 2017, XPO reported a net income of $340.2 million, or $2.45 per diluted share, on revenue of $15.38 billion.  *Id.* ¶ 37.

Plaintiff alleges that the statements in XPO's 10-Ks were materially false and misleading and failed to disclose that: "(i) XPO's highly touted aggressive M&A strategy had yielded only minimal returns to the Company; (ii) XPO was utilizing improper accounting practices to mask its true financial condition, including *inter alia*, under-reporting of bad debts and aggressive amortization assumptions; and (iii) as a result, the Company's public statements were materially false and misleading."  *Id.* ¶ 41.

On December 12, 2018, Spruce Point Capital Management ("Spruce Point") published a report regarding XPO entitled "Trucking Ridiculous; End of the Road." *Id.* ¶ 42. It reported that a forensic investigation revealed financial irregularities covering up XPO's growing financial strain and inability to complete acquisition plans. *Id.* ¶ 7, 42. The Spruce Point report stated that it had uncovered "concrete evidence to suggest dubious tax accounting, under-reporting of bad debts, phantom income through unaccountable M&A earn-out liabilities, and aggressive amortization assumptions: all designed to portray glowing 'Non-GAAP' results." *Id.* ¶ 42. It further reported that "XPO insiders have aggressively reduced their ownership interest in the Company since coming public, and recently enacted a new compensation structure tied to 'Adjusted Cash Flow Per Share' – defined in such a non-standard way that it is practically meaningless." *Id.* ¶ 7. The report concluded, "[i]n our opinion, XPO has used a nearly identical playbook from URI leading up to its SEC investigation, executive felony convictions, and share price collapse." *Id.* Publication of the report was followed by the decline of XPO's stock price by 26.17%. *Id.* ¶ 44.

B. Procedural History

On December 14, 2018, Plaintiff Larry Labul filed this action on behalf of all persons and entities who purchased or otherwise acquired XPO securities between February 26, 2014 and December 12, 2018, seeking to recover damages caused by Defendants' alleged violations of federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, against XPO and the Individual Defendants. [Dkt. 1 ¶ 1]. Plaintiff Labul attached to the Complaint a certification, as required by federal securities law, in which he listed his transactions in

XPO securities and stating that he is "willing to serve as a representative party on behalf of a Class of investors who purchased or acquired XPO securities during the class period." [Dkt. 1-1 (Labul Cert.)].

The same day, Plaintiff published notice of the action, as required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i), in *MarketWatch*, advising members of the purported class of the pendency of the action, the claims therein, the purported class period, and that the deadline to file a motion to serve as lead plaintiff was February 12, 2019. *See Pomerantz Law Firm Announces the Filing of a Class Action against XPO Logistics, Inc. and Certain Officers – XPO*, MARKETWATCH (Dec. 14, 2018).[1]

On February 11, 2019, the parties filed a joint stipulation seeking approval of the Court to extend certain deadlines. [Dkt. 18 (Joint Stipulation)]. In doing so, counsel for Defendants accepted service of the summons and Complaint on behalf of Defendants and waived any defense as to the sufficiency of service of process. *Id.* at 2. The parties requested that the Court-appointed lead plaintiff have sixty days after appointment to file an amended or consolidated complaint or to designate the original Complaint as the operative complaint and that Defendants then have sixty days to answer, move against, or otherwise respond to the operative complaint. *Id.* at 3. On March 7, 2019, the Court approved the requested deadlines and specified that the lead plaintiff would have twenty-one days to oppose a responsive motion and Defendants would have fourteen days to file a reply. *See* [Dkt. 66 (Mar. 7, 2019 Order)].

---

[1] Available online at https://www.marketwatch.com/press-release/pomerantz-law-firm-announces-the-filing-of-a-class-action-against-xpo-logistics-inc-and-certain-officers---xpo-2018-12-14.

On February 12, 2019, six putative plaintiffs moved for appointment as lead plaintiff and for appointment of their counsel as lead counsel. *See* [Dkt. 20 (Cooper Mot. for Appointment); Dkt. 23 (Paraskeva Mot. for Appointment); Dkt. 27 (Riviera Beach Police Pension Fund Mot. for Appointment); Dkt. 21 (IBT Pension Funds Mot. for Appointment); Dkt. 33 (Trustees of Local 646A United Food and Commercial Workers Fund Mot. for Appointment); Dkt. 36 (XPO Investor Grp. Mot. for Appointment)]. As competing motions were filed, one party withdrew her motion recognizing that other parties had a greater financial stake in the action. *See* [Dkt. 42 (Paraskeva Withdrawal)]. Three others filed notices of non-opposition to the competing motions in recognition of the fact that other parties had a greater stake, *see* [Dkt. 43 (XPO Investors Grp. Notice of Non-Opp'n); Dkt. 58 (Cooper Notice of Non-Opp'n); Dkt. 78 Riviera Beach Police Pension Fund Notice of Non-Opp'n)], with Mr. Cooper and Riviera Beach Police Pension Fund expressing their continued willingness and ability to serve as lead plaintiff or class representative should the Court determine that the other lead plaintiff movants with larger losses are not appropriate class representatives. *See* [Dkt. 58 at 2; Dkt. 78 at 2].

Motions for appointment as lead plaintiff by Local 817 IBT Pension Fund, Local 272 Labor-Management Pension Fund, and Local 282 Pension Trust Fund and Local 282 Welfare Trust Fund (the "Pension Funds") and the Trustees of Local 464A Funds United Food and Commercial Workers Union Pension Fun and Local 464A United Food and Commercial Workers Union Welfare Service Benefit Fund ("Local 646A") remain.

On February 27, 2019, Defendants XPO and Jacobs filed a Notice of Relevant Information Concerning the Appointment of Lead Plaintiff and Counsel, advising the Court that they believed lead plaintiff movant, the Pension Funds, "implicates a

significant issue that warrants careful consideration at this time." [Dkt. 47 (Defs.' Notice) at 1-2]. The Notice explained an alleged ongoing effort by the International Brotherhood of Teamsters (the "Teamsters") to unionize XPO facilities and a lawsuit pending in Illinois state court against the Teamsters concerning trespass at an XPO facility near Chicago. *Id.* The Pension Funds filed additional memoranda in response to Defendants' Notice and in further support of their motion for appointment. *See* [Dkt. 59 (Pension Funds' Opp'n to Competing Mots.); Dkt. 72 (Pension Funds' Reply to Defs.' Notice); Dkt. 75 (Pension Funds' Reply in support of Mot. for Appointment)]. Local 464A also filed opposition and reply memoranda in support of its motion for appointment. *See* [Dkt. 60 (Local 464A Opp'n to Competing Mots.); Dkt. 74 (Local 464A Reply in support of Mot. for Appointment)].

II.   <u>STANDARD OF REVIEW</u>

In a Private Securities Litigation Reform Act ("PSLRA") class action brought under 15 U.S.C. § 78u-4, a district court must "consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" within ninety days of publication of early notice of the action. *Id.* § 78u-4(a)(3)(B)(i); *see also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1812 (2018) ("The PSLRA thus contemplates a process by which all prospective class representatives come forward in the first-filed class action and make their arguments to the court for lead-plaintiff status.") (citations omitted).

In making this appointment, "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that—(aa) has either filed the complaint or made a motion [to be appointed lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A member of the purported plaintiff class may rebut the presumption by offering evidence that the "presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class . . . [or] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

The "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court approves or disapproves the lead plaintiff's choice of counsel, deferring to the lead plaintiff's preference. *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 104 (D. Conn. 2006) (*In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)).

III.  <u>DISCUSSION</u>

A. <u>Selection of Lead Plaintiff</u>

Each of the movants satisfies the first requirement—they timely filed motions for appointment as lead plaintiff, within sixty days of the publication of notice of the lawsuit. *See id.* § 78u-4(a)(3)(B)(iii)(I).

"Two objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to

satisfy the requirements of Rule 23." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 81 (2d Cir. 2004) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

### 1. Largest Financial Interest

The Court must determine the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To determine the party with the largest financial interest, the Court may consider: "(1) [t]he number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (citing *Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). The last factor, financial loss, is the most important. *Varghese v. China Shenghuo Pharma. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (collecting cases).

The Pension Funds claim to have suffered the greatest losses of the movants, approximately $1,222,938 under both the "last in, first out" ("LIFO") and "first in, first out" ("FIFO") calculations. *See* [Dkt. 34 (Pension Funds Mem. in support of Mot. for Appointment) at 4]. Local 464A reports suffering the second greatest losses, of approximately $751,456 under a LIFO basis. *See* [Dkt. 37 (Local 464A Mem. in support of Mot. for Appointment) at 7]. The XPO Investor Group claims the next highest losses at $325,342, *see* [Dkt. 38 (XPO Investor Grp. Mem. in support of Mot. for Appointment) at 6], followed by Bradley Cooper $285,510, *see* [Dkt. 21 (Cooper Mem. in support of Mot. for Appointment) at 2], and Riviera Beach Police Pension Fund with $89,244, *see* [Dkt. 28 (Riviera Beach Police Pension Fund Mem. in support of Mot. for Appointment) at 2]. As

such, the Pension Funds have the largest financial interest in the outcome of the litigation.

The parties do not contest this determination. Local 464A does point out however that its losses are greater than those of each individual Pension Fund—Local 817 IBT Pension Fund, Local 272 Labor-Management Pension Fund, and Local 282 Pension Trust Fund and Local 282 Welfare Trust Fund—which collectively make up the Pension Funds. *See* [Dkt. 60 at 2 n.2]. Many courts have permitted the aggregation of claims for the purposes of becoming lead plaintiff. *See, e.g., In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 118 (E.D.N.Y. 2012) (holding unrelated class members could aggregate their claims in calculating financial loss for lead plaintiff designation purposes); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) ("[T]here can be no doubt that the PSLRA contemplates that some 'groups' can serve as lead plaintiff."); *Weltz v. Lee,* 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001) (noting that some courts "have permitted the aggregation of claims for the purposes of becoming lead plaintiff"). Moreover, the plain language of the PSLRA permits appointment of a person *or group of persons* to be lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In light of the case law and the text of the PSLRA, and in the absence of any substantive arguments from the other movants, the Court finds that it is proper to aggregate the losses of the Pension Funds for purposes of determining the movant with the greatest financial interest in this litigation.

### 2. Rule 23 Requirements

Having identified the Pension Funds as the movant with the greatest financial interest in the outcome of the litigation, the Court must consider their ability to satisfy the requirements of Rule 23.

Under Federal Rule of Civil Procedure 23, there are four requirements for the certification of a class action lawsuit:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "[T]ypicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA." *Kaplan*, 240 F.R.D. at 94 (quoting *Shi v. Sina Corp.*, Nos. 05 Civ. 2154 (NRB) et al., 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005)). Additionally, at this stage, "a prospective lead plaintiff need only make a preliminary, *prima facie*, showing that his or her claims satisfy the requirements of Rule 23." *In re Fuwei Film Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) (citing *Kaplan*, 240 F.R.D. at 94); *see also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("[A] wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.").

"The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Kaplan*, 240 F.R.D. at 94. "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

The Pension Funds' claims are typical of the purported class. Like the other purported class members, the Pension Funds allege that they (1) purchased XPO

securities during the Class Period, (2) were adversely affected by Defendants' allegedly false and misleading statements; and (3) suffered damages when XPO's true financial situation was revealed. [Dkt. 34 at 5]. Based on the memoranda and declarations submitted by the Pension Funds, they have made a preliminary showing that they satisfy the adequacy requirement. They have shown that their proposed counsel, Robbins Geller, is highly qualified, experienced, and capable of handling the litigation. *Id.* at 6-7. The Pension Funds are ready and willing to serve as lead plaintiff, *see* [Dkt. 35-4 (Joint Decl. in support of Lead Plf. Mot.) at ¶¶ 6-7], and have a significant interest in the outcome of the case given the losses they reportedly incurred. Finally, they contend that their interests align with those of the class members in that they suffered the same injuries and there is no evidence that the Pension Funds have any interests antagonistic to those of the other class members. *Id.* at 6.

The Court holds that the Pension Funds have made a sufficient preliminary showing of satisfaction of the Rule 23 requirements. This, along with the fact that they claim the greatest loss, entitles the Pension Funds to a rebuttable presumption that they are the most adequate lead plaintiff under the PSLRA.

### 3. Arguments Rebutting the Presumption

The PSLRA provides that this presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). The parties and movants have raised two issues with respect to the Pension Funds' ability to satisfy the requirements of Rule 23. Defendants'

Notice of Relevant Information argues that an alleged connection between the Pension Funds and Defendants reveals that the Pension Funds' interests diverge from those of the rest of the class and that they would be subject to unique defenses.  [Dkt. 47 (Notice)]. Local 464A argues that, as trusts, the Pension Funds lack standing or are, at the least, subject to unique standing defenses in addition to the unique defenses Defendants have indicated an intention of raising.  [Dkt. 60 at 5-11].

a.  <u>Local 464A's Rebuttal Argument</u>

Local 464A argues that the Pension Funds cannot serve as lead plaintiff because they are trusts which lack standing.  [Dkt. 60 at 6].  Local 464A contends that, as trusts, the Pension Funds are not legal entities and are not capable of legal action on their own behalf but only through their trustees who must sue or be sued in their own names.  *Id.* (citing 76 Am. Jur. 2d Trusts § 2 (2019)).  Because the Pension Funds brought suit in their own names rather than via their trustees, Local 464A argues that the Pension Funds do not have standing.  *Id.* at 7.  Local 464A's reliance on the common law of trusts however overlooks the impact ERISA had on an ERISA pension fund's rights.

Section 1132(d) of ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity."  29 U.S.C. § 1132(d)(1).  The Second Circuit has concluded that this section "authorizes suits to be brought by funds in other situations where there would properly be jurisdiction."[2] *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983).  The court explained,

---

[2] Accordingly, the Second Circuit went on to hold that because ERISA's jurisdictional provision grants standing to sue only to plan participants, beneficiaries, and fiduciaries, the court did not have subject matter jurisdiction over the plaintiff pension fund's complaint alleging violations of ERISA.  *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983).

"[f]or example, if a fund became involved in a contract dispute, and wished to pursue a state law contract claim, § 1132(d)(1) would allow the fund to bring such an action in its own name." *Id.* Citing the Second Circuit case, the Ninth Circuit held that an ERISA pension plan need not bring suit under the Labor Management Relations Act ("LMRA") via their trustees because, as ERISA plans, they are proper plaintiffs and the action is within the jurisdictional ambit of § 301 of the LMRA. *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984-85 (9th Cir. 1999).

The Pension Funds are multiemployer pension plans covered by ERISA and therefore have been granted the "status of entities capable of bringing suit in any context in which the district court's exercise of subject matter jurisdiction is otherwise appropriate." *Id.* at 984. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

The Pension Funds satisfy Article III's standing requirements—(1) they have suffered injury in fact, as they are institutional investors that directly purchased XPO stock during the Class Period and suffered substantial personal losses on that XPO stock; (2) there is causation in that the asserted injury in fact is fairly traceable to XPO's alleged false statements and misrepresentations regarding their financial stability; and (3) there is redressability in that there is a non-speculative likelihood that the injury can be remedied by the relief requested. *See WR Huss Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008).

The injury-in-fact issue presented in *WR Huff* by the fact that the alleged injury was not suffered by the plaintiff WR Huff, but by its clients, which Local 464A cites, is not present in this case. *See WR Huff Asset Mgmt. Co. LLC*, 549 F.3d at 106-07. In *WR Huff*,

the plaintiff was "an investment advisor for institutional investors such as public employee pension funds" that brought suit "as the investment advisor and attorney-in-fact on behalf of certain purchasers of . . . debt securities" but not as an investor itself. *Id.* at 104. Here, the Pension Funds purchased and owned the XPO stock and therefore suffered the alleged injury directly.

As such, the Pension Funds have standing to sue and may properly act as lead plaintiff in this case.

### b. Defendants' Rebuttal Argument

The Court must first consider the threshold question of whether Defendants have standing to rebut the most adequate lead plaintiff presumption. In their response to Defendants' Notice, the Pension Funds argue that only other class members can challenge the presumptive lead plaintiff's qualifications, relying on the language of the PSLRA and case law from outside this Circuit, *see* [Dkt. 59 at 2], while Defendants point to case law from within the Second Circuit finding that defendants have standing to oppose, *see* [Dkt. 67 at 2].

The PSLRA provides that "[t]he presumption . . . may be rebutted only upon proof by a member of the purported class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). In that subsection, the presumption is the subject and rebutting the presumption is the action. The prepositional phrase "by a member of the purported class" indicates who performs the action. Thus, while somewhat inartfully stated, the statute indicates that a member of the purported class may rebut the presumption only upon proof that the presumptive most adequate lead plaintiff will not fairly and adequately protect the interests of the class or

is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Based on this statutory language, the Third Circuit concluded that "only class members may seek to rebut the presumption, and the court should not permit or consider any arguments by defendants or non-class members." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001). Numerous district courts have held the same. *See e.g.*, *Hill v. Accentia Biopharma., Inc.*, No. 8:13-cv-1945-T-23EAJ, 2013 WL 6283712, at *1 (M.D. Fla. Dec. 4, 2013); *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 8 n.5 (D.D.C. 2002); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 409 (S.D. Tex. May 8, 2000); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997); *Greenbel v. FTP Software, Inc.*, 939 F. Supp. 57, 60 (D. Mass. 1996).

The Second Circuit has not addressed this issue but multiple decisions from courts within the Second Circuit have concluded, or implied, the opposite. These decisions find that "nothing in the text of the Reform Act precludes or limits the right of defendants to be heard on this issue." *King v. Livent, Inc.*, 36 F. Supp. 2d 187, 190 (S.D.N.Y. 1999) (citing *Howard Gunty Profit Sharing v. Ouantum Corp.*, Civ. No. 96-20711 SW, slip op. at 6-7 (N.D. Cal. Feb. 6, 1997); *In re Read-Rite Corp. Sec. Litig.*, No. C-97-20059 RMW, slip op. at 3 (N.D. Cal. May 28, 1997)); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n.3 (S.D.N.Y. 2012) (holding that "nothing in that provision, nor any other provision of the PSLRA, forbids a defendant from *arguing* against appointment"); *In re Luxottica Grp., S.p.A. Sec. Litig.*, No. 01-CV-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004) ("[F]or lack of any clear statutory language in the PSLRA precluding or limiting the right of defendants to be heard on the issue of lead plaintiff and

lead counsel designations, defendants have standing to be heard during the appointment process.").

This Court recognizes that the decisions out of the Second Circuit have had good reason for allowing defendants to weigh in on lead plaintiff appointment. For instance, the Eastern District of New York observed that "there is nothing in the PSLRA that indicates that the application for appointment of lead plaintiff is one that is made <u>ex parte</u>." *City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust*, CV 08-1418, 2009 WL 10709107, at *2 (E.D.N.Y. 2009). The Southern District of New York has reasoned that "permitting defendants to make a limited facial challenge to a plaintiff's motion for appointment does not disrupt the statutory framework Congress set forth in § 78u-4(a)(3)(B)(iii)[;] [r]ather it is consistent with the goal of alleviating the abuses of the class action device in securities litigation." *King*, 36 F. Supp. 2d 190 (quoting *Howard Gunty*, Civ. No. C-96-20711 SW, at 7). Some courts, in the Second Circuit and others, have decided to consider information provided by the defendant when useful in rendering its lead plaintiff decision, whether they have standing to formally oppose or not, in light of the fact that the PSLRA requires courts to take a more active role in supervising the process of selecting lead plaintiffs. *See Tai Jan Bao v. SolarCity Corp.*, No. 14-cv-01435, 2014 WL 3945879, at *2 (N.D. Cal. Aug. 11, 2014); *Saratoga Advantage Trust v. ICG, Inc.*, Civ. Action No. 2:08-0011, 2009 WL 777865, at *2 n.2 (S.D. W. Va. Mar. 20, 2009); *In re Flight Safety Tech., Inc. Sec. Litig.*, 231 F.R.D. 124, 129 n.3 (D. Conn. 2005); *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM), 2003 WL 194204, at *4 n.8 (S.D.N.Y. 2003); *In re First Union Corp. Sec. Litig.*, 157 F. Supp. 2d 638, 641 (W.D. N.C. 2000).

Notwithstanding these legitimate points, the statutory language makes clear that *class members*, not defendants, may rebut the presumption. Accordingly, the Court holds that Defendants lack standing to oppose the presumption that the Pension Funds are the most adequate plaintiff.

Even if Defendants did have standing, their argument would be unavailing. Defendants assert that the International Brotherhood of Teamsters (the "Teamsters") is the parent organization of the Pension Funds. *See* [Dkt. 47 at 2]. According to Defendants, the Teamsters have been pursuing an aggressive campaign to unionize XPO facilities. *Id.* at 2-4. This campaign included "trespass, assault, and intimidation tactics" by the Teamsters and related entities and individuals at an XPO facility near Chicago. *Id.* at 4-5. As a result of that incident, XPO Logistics Freight, Inc., an affiliate of the defendant entity in this case, filed a civil action against the Teamsters, a local Illinois Teamsters union and joint council, and several individual Teamsters members. *Id.*

Defendants argue that "[t]he Teamsters' ongoing campaign against XPO and the pending trespass litigation raise serious questions about whether the Teamsters Pension Funds satisfy Rule 23's adequacy and typicality requirements, even at the preliminary level of scrutiny applied to determine the presumptively 'most adequate plaintiff' under the PSLRA." [Dkt. 47 at 5]. Defendants contend that the Pension Funds have the unique objective of unionizing XPO, which the other members of the class do not share. *Id.* They also suggest that the Pension Funds will be subject to unique defenses. *Id.* at 6.

These arguments are unpersuasive. As the Pension Funds point out, the unions, Local 817, Local 272, and Local 282, are local affiliates of the Teamsters. *See* [Dkt. 72 at

6].  But each Pension Fund is a singular entity, a multiemployer pension plan, with no parent and no subsidiaries, and no affiliation with the Teamsters.  *See* [Dkt. 35-4 (Pension Funds' Joint Decl.) at ¶ 2].  ERISA establishes that the Pension Funds' sponsors, here their boards of trustees, *see id.* at ¶¶ 2-4, operate as fiduciaries, with the responsibility of running the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses.  29 U.S.C. § 1104(a).  Thus, the fiduciaries are obligated to act in the interest of the fund participants and beneficiaries—whose interests here align with those of the other putative class members—and would violate that obligation and open themselves up to liability if they acted in the interest of another party, for instance, the Teamsters.

Defendants have not indicated how the Pension Funds are involved in any campaign to unionize XPO facilities or the related Illinois litigation.  Nor have Defendants provided any evidence that the Pension Funds have any interest in said campaign or litigation.  Defendants have not stated how or why the Pension Funds would subvert their interests, and their fiduciary duties to the Fund participants and beneficiaries, by opting to act in the interest of non-pensioners.  The conflict asserted by Defendants is entirely speculative and is far from the proof required to rebut the presumption that the Pension Funds are the most adequate lead plaintiff.

Additionally, Defendants fail to provide concrete suggestions as to how these circumstances create unique defenses related to the Pension Funds.  The only example offered by Defendants is that it is "paradoxical" to suggest that the Pension Funds would purchase 43,000 shares of XPO stock while the Teamsters are simultaneously declaring XPO a "threat."  [Dkt. 47 at 6].  Defendants provide no rationale for why the Pension

Funds' trustees would consider a statement by the Teamsters regarding XPO unionization when making investment decisions for the Funds. Their fiduciary duties require them to invest Fund assets with care, skill, prudence, and diligence, *see* 29 U.S.C. § 1104(a)(B), *not* with consideration of interests of third parties. Thus, Defendants fail to set forth what unique defenses would potentially arise.

Such conclusory assertions of inadequacy, without specific evidentiary support for the existence of an actual or potential conflict of interest or a unique defense to which the lead plaintiff would be subject, are insufficient. *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *see also Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration."). Proof of inadequacy, and not merely speculation, is required to rebut the presumption of most adequate plaintiff. *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004). Defendants arguments do not meet this burden.

The Court notes that Local 464A raises the concern that Defendants have "announced their intention" to raise defenses unique to the Pension Funds. [Dkt. 60 at 11]. Accordingly, Local 464A argues that, regardless of the merits of Defendants' potential defenses, litigation concerning these unique defenses will distract the Pension Funds from prosecuting the claims of the class. *Id.* at 12 (citing *Gary Plastic*, 903 F.2d at 180 (holding that a plaintiff is not adequate or typical if it is "subject to unique defenses which threaten to become the focus of the litigation")). First, Defendants have failed to set forth any viable unique defense which they mean to assert against the Pension Funds. Second, a defendant should not be able to threaten motions practice on unique but

nonspecific and unsupported issues and in so doing choose its opponent. The potential that a defendant will raise unique challenges to a lead plaintiff without actual evidence of those unique defenses is not sufficient to overcome the presumption.

Accordingly, the most adequate lead plaintiff presumption remains unrebutted and the Court therefore GRANTS the Pension Funds' motion for appointment as lead plaintiff.

B. Approval of Lead Counsel

The PSLRA establishes that upon appointing a lead plaintiff, he or she "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention." *In re KIT Dig., Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) (citing *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).

The Pension Funds have chosen Robbins Geller to prosecute this case on behalf of the class. Robbins Geller has submitted a firm resume setting forth its extensive experience in prosecuting securities fraud actions. [Dkt. 35-5 (Firm Resume) at 2-6 (citing, *inter alia*, *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.); *Alaska Elec. Pension Fund v. CitiGroup Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.)]. Based on its proven track record as counsel in securities class actions, Robbins Geller is approved as lead counsel.

## Conclusion

For the reasons set forth above, the Court GRANTS the motion of the Pension Funds for appointment as Lead Plaintiff for the proposed Class in this action, [Dkt. 31], and APPROVES its selection of Robbins Geller as Lead Counsel for the Class.

Further, the Court DENIES as moot the motions for appointment of Bradley Cooper, [Dkt. 20], Riviera Beach Police Pension Fund, [Dkt. 27], Local 464A, [Dkt. 33], and XPO Investor Group, [Dkt. 36].

IT IS SO ORDERED
_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: April 2, 2019