UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY LABUL, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>- v. -<br><br>XPO LOGISTICS, INC., BRADLEY S. JACOBS, JOHN J. HARDIG and SCOTT B. MALAT,<br><br>                              Defendants. | Case No. 3:18-cv-02062-SRU<br><br>**MEMORANDUM OF LAW OF JOHN J. HARDIG IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |

**PRELIMINARY STATEMENT**

Defendant John J. Hardig joins in the arguments made by XPO and Brad Jacobs in their memorandum of law in support of Defendants' motion to dismiss the Complaint in this action. In their memorandum of law, XPO and Jacobs have laid out the legal framework for assessing the Complaint and identified a host of incurable deficiencies that require its dismissal, with prejudice. As that memorandum makes clear, the Complaint is not only deficient as to all Defendants, it has fatal flaws particular to Mr. Hardig. We write to amplify why those flaws, and additional defects, require dismissal of the Complaint against Mr. Hardig.

**ARGUMENT**

### I. THE COMPLAINT FAILS TO ALLEGE ANY ACTIONABLE STATEMENTS BY MR. HARDIG

Under the Supreme Court's teaching in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 148 (2011), the law is clear: Mr. Hardig can only be liable for statements "made" by him. While the Complaint[1] contains quotations attributed to others – none of which are actionable, for the reasons set forth in the XPO Memo and Mr. Malat's brief – Plaintiffs do not recite a single actionable, free-standing statement specifically "made" by Mr. Hardig.[2] Instead, Plaintiffs rely on XPO's Forms 10-Q and 10-K SEC filings, press releases, and a 2017 S-3 Registration Statement as allegedly false or misleading "statements" by Mr. Hardig. But, as the XPO Memo amply demonstrates, those well-balanced materials, including their disclosures, disclaimers and protected forward-looking statements, preclude Plaintiffs' claims.

---

[1] References to the "Complaint" are to the Consolidated Class Action Complaint filed on June 3, 2019, Docket entry 102. References to "Compl. ¶__" refer to specific paragraphs in the Complaint.

[2] References to the "XPO Memo" are to the Memorandum of Law In Support of Defendants' Motion To Dismiss The Consolidated Class Action Complaint, filed August 2, 2019. References such as "XPO Memo ___" are to specific sections within that Memo, at the pages identified. References to "Mr. Malat's brief" are to the Memorandum of Law In Support of Defendants' Motion to Dismiss, filed by Scott B. Malat on August 2, 2019.

With respect to the SOX certifications signed by Mr. Hardig and Mr. Jacobs from 2016 to 2018, which are not free-standing, but directly tied to the corresponding SEC filings, the Complaint repeatedly makes the conclusory assertion that those certifications were misleading, but Plaintiffs do not identify which parts of the SOX certifications were allegedly false or misleading.  As the XPO Memo notes (XPO Memo I.D, at 20), that alone is sufficient to defeat any claim based on the certifications.  *See In re ITT Educ. Servs. Inc. Sec. Litig*, 859 F. Supp. 2d 572, 577-78 (S.D.N.Y. 2012).  Moreover, the Complaint's assertion that the certifications were false based on material false statements or omissions in the accompanying filings fails because Plaintiffs have not adequately pled any such underlying misstatements or omissions, much less Mr. Hardig's knowledge of them. *See* XPO Memo at I.D, at 20; *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 583 n.4 (S.D.N.Y. 2013).  Because none of XPO's SEC filings are actionable neither are the accompanying SOX certifications.

Not only do XPO's SEC filings and the SOX certifications fail to give rise to liability for Mr. Hardig, it bears noting that the Complaint's temporal misalignment further underscores the infirmity of Plaintiffs' claims, particularly with respect to the 2016 and 2017 SEC filings underlying the Securities Act claims in Counts III and IV. (*See* Compl. ¶¶282-292.)

By Plaintiffs' own account, the first supposed "red flags" that Amazon was effectuating a "plan" to "leave XPO" came no earlier than April 2018.  (Compl. ¶ 57.)  Putting aside the many other flaws in Plaintiffs' "red flag" allegations, on the face of the Complaint, those "flags" allegedly arose between nine and eighteen months *after* the 2016 and 2017 SEC filings, and the 2017 Form S-3 Registration Statement that incorporated them by reference (Compl. ¶185).  As the Second Circuit has repeatedly cautioned, corporate officers "need not be clairvoyant." *Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  Given their proper temporal sequence, it is clear that events occurring subsequently, in 2018, cannot and do not make statements from prior years

2

(2016 and 2017) false or misleading at the time they were made. *See Johnson* v. *Sequans Communications S.A.*, 2013 WL 214297, at *12 (S.D.N.Y. Jan. 17, 2013).

Given the complete absence of any actionable statements "made" by Mr. Hardig the Complaint as to him fails. Recognizing this, Plaintiffs attempt to create liability through the device of group pleading. But that attempt fails too.

## II.   THE COMPLAINT IMPERMISSIBLY RELIES ON GROUP PLEADING

The PSLRA and the Supreme Court's decisions in *Tellabs* and *Janus* underscore the individual nature of liability in securities fraud litigation, and the concomitant need for particularity in accusing an individual of wrongdoing.[3] In place of that requisite particularity, the Complaint resorts to impermissible group pleading with respect to Mr. Hardig. While many courts have agreed that group pleading is dead in the wake of *Janus*, whatever scant vitality it may have, in this case it has none. Without group pleading, it is evident that Mr. Hardig does not belong in this lawsuit.

Rather than make particularized allegations about Mr. Hardig, the Complaint attempts to create liability for him through the vehicle of definition. Plaintiffs define Mr. Hardig as part of a group – "Individual Defendants" – and then define "Individual Defendants" as part of a larger group, the "Defendants," to whom Plaintiffs attribute several statements, actions and collective states of mind. (Compl. ¶30.) Not only is that an impermissible basis for assigning liability to Mr. Hardig, as discussed below, this act of definition also produces the absurd result of accusing him of wrongful activity at XPO ***after he left the company*** in August 2018 (Compl. ¶28) – a

---

[3] "PSLRA" refers to the Private Securities Litigation Reform Act of 1995, 109 Stat. 737. *Tellabs* refers to *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

classic illustration of why generalized group pleading cannot replace the particularized pleading the law requires.

### A. The Complaint's Group Pleading Fails to Allege *Scienter* as to Mr. Hardig

When the group pleading infirmity is properly considered and the Complaint is parsed, essential elements that are a prerequisite to establishing a claim against Mr. Hardig are clearly missing. This is perhaps most evident with respect to *scienter*. While Plaintiffs' group pleading makes sweeping claims that the Defendants acted with the requisite s*cienter*, the Complaint is completely devoid of particularized allegation to establish that essential element with respect to Mr. Hardig.

As the Supreme Court observed in *Tellabs*, the "[e]xacting pleading requirements" of the PSLRA "requires plaintiffs to state with particularity … the facts evidencing *scienter*, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" 551 U.S. at 308. Moreover, Plaintiffs must allege facts "supporting a strong inference [of scienter] with respect to *each defendant*." *Plumbers & Pipefitters Nat'l Pension Fund* v. *Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 614 (S.D.N.Y. 2015) (emphasis added).

Plaintiffs utterly fail to plead *scienter*. The only particularized facts addressed to Mr. Hardig in the expansive Complaint are that he left the company (Compl. ¶237(d)), and that he signed SOX certifications (Compl. ¶237(e)). But, as the XPO Memo correctly demonstrates, it is black-letter law that resignations alone do not establish an intention "to deceive, manipulate, or defraud." (*See* XPO Memo, II.B.4, at 20 and cases cited there.) And, as the XPO Memo also correctly states, SOX certifications do not indicate scienter absent allegations of "facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements." *Orthofix Int'l N.V.*, 89 F. Supp. 3d at 615. Indeed, if the mere signing of a SOX certification were sufficient to establish *scienter*, in every case of alleged securities fraud, all certifying

4

corporate officers would *ipso facto* be presumed to have acted with *scienter* and the requirement to establish that essential element with particularity would be rendered meaningless.

None of the Complaint's other offerings with respect to *scienter* even try to make specific reference to Mr. Hardig, and completely fail the particularity test. This is not only legally impermissible (*see* XPO Memo II at 23-24, and cases cited there), it further highlights the flaw in the Complaint's group pleading. For example:

1. In addition to other legal deficiencies in paragraph 237(a) concerning access to information (*see* XPO Memo II.B.1, at 26-27), a review of the paragraphs cross-referenced in 237(a) (Compl. ¶77–107) reveals that Mr. Hardig is not alleged to have participated in, or been aware of, many of the events supposedly underlying paragraph 237(a). Indeed, a number of events cross-referenced in paragraph 237(a) did not occur until after Mr. Hardig had left XPO in August 2018. (*See, e.g.*, Compl. ¶¶90-91 (concerning an alleged January 2019 notice of a fulfillment center closing in March 2019).)

2. In addition to other legal deficiencies in paragraph 237(b) concerning Jacobs' statement in May 2019 (*see* XPO Memo II.B.2, at 28), on its face the Complaint alleges that this statement was not made by Mr. Hardig and came after he was long gone from XPO.

3. In addition to other legal deficiencies in paragraph 237(c) concerning WARN notices (*see* XPO Memo II.B.3, at 29), two of those notices were allegedly issued in January 2019, after Mr. Hardig had left the company (Compl. ¶90), and the third, in August 2018, was allegedly issued after Mr. Hardig announced his departure and was in the final days of his employment at the company (Compl. ¶92).

4. In addition to other legal deficiencies in paragraph 237(f) concerning a potential merger in late 2018 (*see* XPO Memo II.B.6, at 30-31), on its face the Complaint does not allege that Mr. Hardig participated in the underlying events, which occurred after he had departed from XPO (Compl. ¶¶28, 29).[4]

---

[4] Plaintiffs' misreading of the calendar with respect to Mr. Hardig is not confined to Paragraph 237, it suffuses the Complaint, for example with respect to supposed "red flags." According to the Complaint, those "flags" began to be visible to low-level employees in April 2018 and continued into February 2019. Even if there were "red flags," even if they had any meaning, and even if they had been visible to senior management – which is simply not the case, as the XPO Memo amply demonstrates – the earliest of those "flags" is not alleged to have appeared until shortly before Mr. Hardig left and most did not allegedly appear until after he was gone.

**B. The Complaint's Group Pleading Illogically Accuses Mr. Hardig of Wrongdoing at XPO After He Was Already Gone**

The fatal flaw in the Complaint's group pleading is not only evident in its failure to plead requisite particularity with respect to *scienter*. It is also clear from the fact that it produces an illogical result.

Despite alleging that Mr. Hardig left XPO on August 15, 2018 (Compl. ¶28), the Complaint's catch-all phrase "Defendants" repeatedly accuses Mr. Hardig of participating in an alleged fraud at XPO *after* he left the Company. Mr. Hardig is not alleged to have had any ongoing role in XPO's business or affairs. Accordingly, plaintiffs' allegations with respect to Mr. Hardig are simply nonsensical. (*See, e.g.*, Compl. ¶¶225, 228 (allegations concerning "statements by Defendants [that] were materially misleading" on October 31 and November 1, 2018); Compl. ¶¶229, 231, 232, 233, 235, 236 (allegations concerning alleged Item 303 violations by "Defendants" with respect to SEC filings, including the 3Q18 10-Q which was prepared and filed after Mr. Hardig's August 2018 departure).)

While "either/or" pleading in a complaint may be permissible, there is no room for allegations that flatly contradict and refute one another. Yet that is precisely what the Complaint's group pleading does. Under *Janus* and its progeny, were the Complaint not already defeated by a host of other defects already stated – which it is – its reliance on impermissible and irrational group pleading would be fatal to the Complaint as to Mr. Hardig.

**III.     THE COMPLAINT MISSTATES SIGNIFICANT FACTS ABOUT MR. HARDIG**

Finally, the Complaint alleges several facts about Mr. Hardig that are demonstrably false from judicially noticeable documents. For example, Plaintiffs allege that Mr. Hardig "resigned abruptly and without explanation…following disappointing quarterly results…." (Compl. ¶237(d).) But this statement is wrong in two crucial respects.

6

*First*, Plaintiffs have their timing wrong.  Mr. Hardig left contemporaneously with the filing of XPO's earnings results in Q2 2018.  (Compl. ¶28.)  But, far from being disappointing, those results were consistent with guidance and, in fact, set record results for revenue, net income, adjusted EBITDA, cash flow from operations and free cash flow.  *See* XPO 2Q 2018 Press Release.[5]  Indeed, following the announcement of its Q2 2018 results, the Company's stock rose.[6]

*Second*, Mr. Hardig did not leave "without explanation."  Mr. Hardig left, after nearly seven years with the Company, to "spend more time with his family," as his departure announcement made clear.  *See* XPO Aug. 1, 2018 Press Release.[7]  Indeed, Mr. Hardig has not taken a new job since leaving XPO, as his publicly available LinkedIn profile confirms.[8]  Plaintiffs' failure to address this explanation dooms their scienter allegations, as explained in XPO Memo II.B.4, at 30.  *See In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 446-47 (S.D.N.Y. 2005) (no inference of scienter where CFOs resigned to "accept[] another opportunity" and "for health reasons," and Plaintiffs "make no attempt to challenge these non-fraud related explanations").  More fundamentally, however, Plaintiffs' repeated mischaracterization of the facts underscores the unsoundness of their Complaint.  A plaintiff is free to recite history, but not to rewrite it.  The Complaint strays from that basic tenet and therefore cannot survive.

---

[5] Available at https://news.xpo.com/en-us/news/1193/xpo-logistics-announces-second-quarter-2018-results.
[6] Available at https://finance.yahoo.com/quote/XPO/history/67.01 0.30
[7] Available at https://news.xpo.com/en-us/news/1194/xpo-logistics-announces-john-hardig-will-step-down-as-cfo?mod=djemCFO_h.
[8] Available at https://www.linkedin.com/in/john-hardig-3458a064/.

## CONCLUSION

For the reasons demonstrated above, and in the XPO Memo, and in Mr. Malat's brief, the Complaint should be dismissed in its entirety, with prejudice. At a minimum, the Complaint must be dismissed as to Mr. Hardig.

Dated: New Haven, Connecticut

August 2, 2019

MARTIN J. AUERBACH, ESQ.

/s/ Martin J. Auerbach
Martin J. Auerbach (ct24184)
(admitted pro hac vice)
90 Broad Street
23rd Floor
New York, NY 10004
Tel: (347) 901-2213
Fax: (646) 304-0175
E-mail: auerbach@mjaesq.com

*Attorney for Defendants John J. Hardig and Scott B. Malat*